No. 11-20547

**IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

**BP EXPLORATION LIBYA LIMITED,**
**Plaintiff - Appellee**

**v.**

**EXXONMOBIL LIBYA LIMITED,**
**Defendant - Appellee**

**v.**

**NOBLE NORTH AFRICA LIMITED,**
**Defendant - Appellant**

**On Appeal from the United States District Court for
the Southern District of Texas, Houston Division**

**BRIEF FOR APPELLANT
NOBLE NORTH AFRICA LIMITED**

Gregg C. Laswell
J. Stephen Barrick
Allen H. Rustay

HICKS THOMAS LLP
700 Louisiana Street, Suite 2000
Houston, Texas 77002
Tel. No. (713) 547-9100
Fax No. (713) 547-9150

**Attorneys for Appellant
Noble North Africa Limited**

## CERTIFICATE OF INTERESTED PERSONS

BP EXPLORATION LIBYA LIMITED,
    Plaintiff – Appellee

v.

EXXONMOBIL LIBYA LIMITED,               No. 11-20547
    Defendant – Appellee

v.

NOBLE NORTH AFRICA LIMITED,
    Defendant – Appellant


    The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of the court may evaluate possible disqualification or recusal.

1.     BP Exploration Libya Limited (Plaintiff – Appellee).

2.     BP p.l.c., a publicly traded corporation (ultimate parent corporation of BP Exploration Libya Limited).

3.     Andrews Kurth LLP and attorneys W. Scott Locher, Thomas W. Taylor, Paul L. Mitchell, and Richard Deutsch (attorneys for BP Exploration Libya Limited).

4.     ExxonMobil Libya Limited (Defendant – Appellee).

5.     Exxon Mobil Corporation, a publicly traded corporation (ultimate parent corporation of ExxonMobil Libya Limited).

6.     Beck Redden & Secrest, L.L.P. and attorneys David J. Beck, Andrea Patterson, and Alex B. Roberts (attorneys for ExxonMobil Libya Limited).

7.     Noble North Africa Limited (Defendant – Appellant).

8.    Noble Corporation, a publicly traded corporation (ultimate parent corporation of Noble North Africa Limited).

9.    Hicks Thomas LLP and attorneys Gregg C. Laswell, Allen H. Rustay, and J. Stephen Barrick (attorneys for Noble North Africa Limited).

*/s/ Gregg C. Laswell*
Gregg C. Laswell
HICKS THOMAS LLP
700 Louisiana Street, Suite 2000
Houston, Texas 77002
(713) 547-9100
(713) 547-9150 (Fax)

**Attorney of record for Noble North Africa Limited**

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not believe that oral argument is necessary because the issues are straightforward questions of law based on undisputed facts. Accordingly, unless oral argument is requested by and granted to another party, Appellant waives oral argument.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ................................................... ii

STATEMENT REGARDING ORAL ARGUMENT ........................................ iv

TABLE OF CONTENTS ...................................................................................v

TABLE OF AUTHORITIES ........................................................... vii

JURISDICTIONAL STATEMENT ...................................................x

STATEMENT OF ISSUES ............................................................. xi

STATEMENT OF THE CASE.......................................................... xii

STATEMENT OF FACTS ...............................................................1

      A.     The Underlying Dispute Between the Parties ...................................1

      B.     The Governing Arbitration Agreement ...........................................2

      C.     The Arbitration and Conciliation Act 1990 ....................................2

      D.     Facts and Events Leading to the Present Controversy....................4

      E.     BP's Complaint In The District Court ............................................5

      F.     Proceedings In the District Court ...................................................6

SUMMARY OF ARGUMENT .........................................................8

ARGUMENT ..................................................................................9

I.     THIS COURT REVIEWS THE DISTRICT COURT'S ORDERS
*DE NOVO*. ...............................................................................9

II.    THE DISTRICT COURT ERRED IN DENYING NOBLE'S
MOTION TO DISMISS. ...........................................................9

III.   THE DISTRICT COURT ERRED IN ORDERING THAT FIVE
ARBITRATORS BE APPOINTED INSTEAD OF THREE.................. 13

      A.     The FAA and the Parties' Agreement Require Three
           Arbitrators. ................................................................. 13

      B.      The Authorities Presumably Relied Upon By the District Court for Requiring Five Arbitrators Are Invalid or Inapposite. ............ 16

IV.    THE DISTRICT COURT SHOULD HAVE ORDERED BP AND EXXON, AS CO-RESPONDENTS IN THE ARBITRATION, TO JOINTLY APPOINT THE SECOND ARBITRATOR. ......................... 20

CONCLUSION ................................................................................................ 25

# TABLE OF AUTHORITIES

## Cases

*Antco Shipping Co., Ltd. v. Sidemar S.p.A.*,
    417 F. Supp. 207 (S.D.N.Y. 1976) ....................................................18

*AT&T Mobility LLC v. Concepcion*,
    131 S. Ct. 1740 (2011) .......................................................... 12, 19

*Baylor Univ. Med. Ctr. v. GE Group Life Assur. Co.*,
    No. 3:06-MC-0103-G, 2007 WL 1701821 (N.D. Tex. June 12, 2007)...........4, 21

*Certain Underwriters at Lloyds, London v. Westchester Fire Ins. Co.*,
    489 F.3d 580 (3d Cir. 2007)...............................................................18

*Clipper Gas v. PPG Indus., Inc.*,
    804 F. Supp. 570 (S.D.N.Y. 1992) ....................................................18

*Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*,
    527 F.2d 966 (2d Cir. 1975), *cert. denied*, 426 U.S. 936 (1976)................... 16-18

*Curtis v. Lowe*,
    87 N.E.2d 865 (Ill. App. Ct. 1949) ....................................................22

*Del E. Webb Const. v. Richardson Hosp. Auth.*,
    823 F.2d 145 (5th Cir. 1987) ..............................................................17

*Dockser v. Schwartzberg*,
    433 F.3d 421 (4th Cir. 2006) .......................................................... 11, 13

*E.I. DuPont de Nemours & Co. v. Sawyer*,
    517 F.3d 785 (5th Cir. 2008) ..............................................................9

*Employers Ins. Co. v. Wausau v. Century Indem. Co.*,
    443 F.3d 573 (7th Cir. 2006) ........................................................ 18-19

*First Options of Chicago, Inc. v. Kaplan*,
    514 U.S. 938 (1995)...........................................................................15

*General Nav., Inc. v. Brovig*,
    No. 80 CIV. 6637, 1981 WL 22812 (S.D.N.Y. Feb. 13, 1981)................... 16, 18

*Government of the United Kingdom of Great Britain v. Boeing Co.*,
    998 F.2d 68 (2d Cir. 1993)....................................................................18

*Howsam v. Dean Witter Reynolds*,
    537 U.S. 79 (2002) ....................................................................... 12, 15

*In re Czarnikow-Rionda Co.*,
    512 F. Supp. 1308 (S.D.N.Y. 1981) ............................................ 16, 18

*In re Salomon Inc. Shareholders' Deriv. Litig.*,
    68 F.3d 554 (2d Cir. 1995)...................................................................10

*Janiga v. Questar Capital Corp.*,
    615 F.3d 735 (7th Cir.), *cert. denied*, 131 S. Ct. 836 (2010)..............20

*Lauman v. Lee*,
    626 P.2d 830 (Mont. 1981) ..................................................................22

*Morris v. Cartwright*,
    258 P.2d 719 (N.M. 1953) ...................................................................22

*Ore & Chem. Corp. v. Stinnes Interoil, Inc.*,
    606 F. Supp. 1510 (S.D.N.Y. 1985) ....................................................18

*Pacific Reins. Mgmt. Corp. v. Ohio Reins. Corp.*,
    814 F.2d 1324 (9th Cir. 1987) ...............................................................9

*Patterson Dental Co. v. Dunn*,
    592 S.W.2d 914 (Tex. 1979)...................................................... 22, 24

*Ranzy v. Tijerina*,
    393 F. App'x 174 (5th Cir. 2010) ..........................................................9

*Rent-A-Center, West, Inc. v. Jackson*,
    130 S. Ct. 2772 (2010)..........................................................................15

*Seacor Holdings, Inc. v. Commonwealth Ins. Co.*,
    635 F.3d 675 (5th Cir. 2011) .................................................................9

*Shaw's Supermarkets, Inc. v. United Food & Comm'l Workers
Union, Local 791*, 321 F.3d 251 (1st Cir. 2003)...................................19

*Stop & Shop Super. Co. LLC v. United Food & Comm'l Workers Union Local 342, AFL-CIO*, 246 F. App'x 7 (2d Cir. 2007)..............................11

*Threadgill v. Prudential Securities Group, Inc.*, 145 F.3d 286 (5th Cir. 1998) ...............................................................20

*Volt Info. Sciences v. Board of Trustees*, 489 U.S. 468 (1989)...........................................................................12

*Wardell v. McMillan*, 844 P.2d 1052 (Wyo. 1992)................................................................22

*Weyerhauser Co. v. Western Seas Shipping Co.*, 743 F.2d 635 (9th Cir.), *cert. denied*, 469 U.S. 1061 (1984) ...............17

## Statutes

9 U.S.C. §§ 1-16...........................................................................................5

9 U.S.C. § 5 .................................................................................9-10, 14, 19

9 U.S.C. § 16................................................................................................x

9 U.S.C. § 202..............................................................................................x

9 U.S.C. § 203..............................................................................................x

28 U.S.C. § 1291...........................................................................................x

21 U.S.T. 2517 ............................................................................................5

## Other Authorities

Funke Adekoya, *Alternative Dispute Resolution in Nigeria*, *in* ADR CLIENT STRATEGIES IN THE MIDDLE EAST AND AFRICA (Aspatore 2009) ..........................3

# JURISDICTIONAL STATEMENT

This is an appeal of a final judgment disposing of all claims and parties in an action seeking judicial appointment of arbitrators pursuant to the Federal Arbitration Act.  Subject matter jurisdiction is based upon:

District Court:     9 U.S.C. §§ 202, 203 (Federal Arbitration Act).

Court of Appeals:  9 U.S.C. § 16(a)(3) (Federal Arbitration Act) and

28 U.S.C. § 1291 (Final Order).

The district court disposed of all claims and parties in a final order signed and entered on May 20, 2011.  (R.E. 3)  Appellant timely filed its original Notice of Appeal of such order on June 20, 2011.  (R.E. 2)

The district court subsequently signed and entered an order on July 1, 2011, denying the last pending motion "as moot" based upon the court's May 20, 2011 order.  (R.E. 5)  Appellant filed an Amended Notice of Appeal on July 6, 2011. (R.E. 4)

## STATEMENT OF ISSUES

<u>ISSUE ONE</u>:  Whether the district court erred in denying Noble North Africa Limited's Motion to Dismiss because the issues raised in the Complaint are procedural and the governing arbitration agreement calls for such disputes to be resolved by the Secretary-General of the Permanent Court of Arbitration at The Hague.

<u>ISSUE TWO</u>:  Whether the district court erred in ordering arbitration before a panel of five (5) arbitrators when the governing arbitration agreement expressly provides for a panel of three (3) arbitrators.

<u>ISSUE THREE</u>:  Whether the district court erred in failing to give effect to the parties' arbitration agreement by ordering that BP Exploration Libya Limited and ExxonMobil Libya Limited, as co-respondents in the underlying arbitration, must jointly select the second of two party-appointed arbitrators.

## STATEMENT OF THE CASE

BP Exploration Libya Limited ("BP") filed this action under the Federal Arbitration Act ("FAA") after Noble North Africa Limited ("Noble") initiated arbitration against it and ExxonMobil Libya Limited ("Exxon"), seeking to recover damages for breach of an offshore drilling contract and related assignment. (R. 008)

Noble is a drilling contractor. In 2009, Noble entered into a contract with Exxon to drill deepwater wells off the coast of Libya (the "Drilling Contract"). (R. 174) In 2010, Exxon entered into an Assignment Agreement with BP and Noble under which BP agreed to assume Exxon's rights and obligations under the Drilling Contract (the "Assignment Agreement."). (R. 212) Any disputes under the Drilling Contract are to be arbitrated in Houston, Texas, before a panel of three arbitrators appointed in accordance with the Arbitration Rules of the Arbitration and Conciliation Act 1990 (the "ACA Rules"). (R. 174 § 18.2) And in the Assignment Agreement, the parties agreed that the arbitration provisions in the Drilling Contract shall govern any dispute to which Noble is a party. (R. 212 § 33)

The ACA Rules provide that "each party" shall appoint one arbitrator and that "the two arbitrators thus appointed shall appoint the third arbitrator." (R. 227 § 44(5)) BP asserted in its Complaint that the arbitration provision is unworkable because it contemplates only two parties, and the arbitration that Noble initiated

against BP and Exxon involves three parties.  (R. 009-011)  BP requested that the court strike all party-appointed arbitrators and impose its own solution under Section 5 of the FAA, 9 U.S.C. § 5.  (R. 016)  Noble moved to dismiss BP's Complaint because the governing arbitration agreement adopts the ACA Rules, which provide that the Secretary-General of the Permanent Court of Arbitration at The Hague may resolve any controversy over the appointment of arbitrators.  (R. 159)  Alternatively, Noble argued that BP and Exxon, as co-respondents, must jointly appoint the second arbitrator.  *Id.*

Based on motion papers alone, and without an oral hearing, the district court, Hon. Vanessa Gilmore, denied Noble's motion to dismiss and ordered that five (5) arbitrators be appointed, consisting of three party-appointed arbitrators previously named by the parties and two additional arbitrators to be chosen by unanimous agreement of the party-appointed arbitrators.  (R.E. 3, 5)  The court's order specified that if the three party-appointed arbitrators are unable to unanimously agree on the two additional arbitrators, the parties must petition the Secretary-General of the Permanent Court of Arbitration at The Hague to make the appointments.  (R.E. 3)

## STATEMENT OF FACTS

**A.     The Underlying Dispute Between the Parties**

The underlying controversy arises out of a Drilling Contract between Noble and Exxon, dated March 31, 2009, in which Exxon contracted to use Noble's Mobile Offshore Drilling Unit, the *Noble Homer Ferrington*, to drill offshore oil wells in Libya.  (R. 224-26)   On March 3, 2010, BP signed an Assignment Agreement with Exxon and Noble under which Exxon agreed to assign, and BP agreed to assume, the Drilling Contract for the time necessary to drill two offshore wells in Libya (the "Assignment Agreement").  (R.E. 7)

The underlying dispute arose when BP refused to accept the assignment or recognize any obligations under the Drilling Contract, then purported to terminate the Assignment Agreement.  *See* Noble's Arbitration Demand (Aug. 27, 2010) (R. 224-26).   Neither Exxon nor BP will pay the day rate to which Noble is entitled under the Drilling Contract.   Exxon claims that performance of the Drilling Contract is BP's responsibility and BP refuses to recognize that it owes any obligations under the Drilling Contract at all.  *Id.* at 1-2.  Noble therefore initiated this arbitration against both Exxon and BP under the Drilling Contract and the Assignment Agreement, maintaining that one or both of them are responsible for performing the Drilling Contract.  *Id.*

**B.      The Governing Arbitration Agreement**

Under the Drilling Contract, Noble and Exxon agreed that U.S. maritime law would govern their contractual relationship.  Drilling Contract § 18.1 (R.E. 6). They further agreed to arbitrate any disputes as follows:

> Any dispute arising out of, or in connection with, this contract shall be finally settled by arbitration under the rules of the Arbitration and Conciliation Act 1990, by three (3) arbitrators appointed in accordance with such rules. . . . .  The arbitration shall be held in the City of Houston, State of Texas of the United States of America.

*Id.* § 18.2.

Under the Assignment Agreement, Noble, Exxon, and BP agreed that "any disputes [arising out of or relating to the Assignment Agreement] to which [Noble] is a party shall be governed by the language contained in Sections 18.1 and 18.2 of the [Drilling Contract] which are incorporated by reference herein and made a part hereof for such purpose as though set out in full herein."  Assignment Agreement § 33 (R.E. 7).  Accordingly, all parties agree that the controversy must be arbitrated in accordance with the arbitration provisions of the Drilling Contract.  (R. 264, 599)

**C.      The Arbitration and Conciliation Act 1990**

The governing arbitration provision in the Drilling Contract requires "arbitration under the rules of the Arbitration and Conciliation Act 1990, by three arbitrators appointed in accordance with such rules."  Drilling Contract § 18.2

(R.E. 6). The "Arbitration and Conciliation Act 1990" is an arbitration statute enacted by the Federation of Nigeria in 1988 that is modeled after the Model Rules of the United Nations Commission on International Trade Law ("UNCITRAL"). *See* Funke Adekoya, *Alternative Dispute Resolution in Nigeria*, *in* ADR CLIENT STRATEGIES IN THE MIDDLE EAST AND AFRICA (Aspatore 2009) (stating that the Arbitration and Conciliation Act 1990 "was enacted in 1988 as a slight modification of the United Nations Commission on International Trade Law (UNCITRAL) Model Law on Arbitration.").

Under the Rules of the Arbitration and Conciliation Act 1990 ("ACA"), when the claimants and respondents have agreed to a three-member arbitration panel, as they have here, "each party shall appoint one arbitrator; and the two arbitrators thus appointed shall choose the third arbitrator who shall act as the presiding arbitrator of the arbitral tribunal." ACA, Sched. 1 ("ACA Rules"), art. (1) (R.E. 8).[1] Once the claimant has appointed its arbitrator, the respondent has 30 days to appoint an arbitrator. *Id.*, art. 7(2). The two appointed arbitrators then have 30 days to appoint a third, presiding arbitrator. *Id.*, art. 7(3).

---

[1] The ACA consists of four "Parts" and three "Schedules." *See* ACA at 1-3 (R.E. 8). Part I relates to arbitration in general; Part II relates to conciliation; Part III contains additional provisions relating to international commercial arbitration and conciliation; and Part IV includes "miscellaneous" provisions. *Id.* Schedule 1 to the Act contains the Arbitration Rules, which largely mirror Part I of the Act; Schedule 2 contains the Convention on Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (otherwise known as the "New York Convention"); and Schedule 3 contains the Conciliation Rules. *Id.* In the event of a conflict between the text of the ACA and the appended Arbitration Rules, the provisions of the ACA control. *Id.*, Sched. 1, art. 1.

3

**D.     Facts and Events Leading to the Present Controversy**

In accordance with the ACA Rules, when Noble first demanded arbitration, it appointed an arbitrator.   *See* Noble's Arbitration Demand (Aug. 27, 2010) (demanding arbitration and appointing Daryl Bristow as arbitrator) (R. 224-26). Noble contends that BP and Exxon, as Respondents, were then required to appoint a second arbitrator, and the two party-appointed arbitrators then had to select a third, presiding arbitrator.   *See* ACA Rules, art. 7(1) ("If three arbitrators are to be appointed, each party shall appoint one arbitrator; and the two arbitrators thus appointed shall choose the third arbitrator who will act as the presiding arbitrator of the tribunal.") (R.E. 8); *cf. Baylor Univ. Med. Ctr. v. GE Group Life Assur. Co.*, No. 3:06-MC-0103-G, 2007 WL 1701821, at *2 (N.D. Tex. June 12, 2007) (recognizing AAA finding in multi-respondent arbitration that "each party" means "each side"); UNCITRAL Rules § 10(1) (requiring respondents to jointly select an arbitrator when more than one respondent is named) (R.E. 9).

Exxon and BP did not jointly appoint an arbitrator.   Instead, they each independently appointed an arbitrator.   *See* BP's Appointment (Oct. 22, 2010) (appointing David D. Caron as arbitrator) (R. 240); Exxon's Appointment (Nov. 29, 2010) (appointing Hon. Robert M. Parker as arbitrator) (R. 242).   The result was *three* party-appointed arbitrators instead of two (the number contemplated by the arbitration agreement and the ACA Rules), and disagreement over how the

party-appointed arbitrators were to appoint a "third" presiding arbitrator. *See* ACA Rules, art. 7(1) (providing that "the two arbitrators thus appointed shall choose the third arbitrator who shall act as the presiding arbitrator of the arbitral tribunal.") (R.E. 8).

## E.    BP's Complaint In The District Court

On October 22, 2010 – the same day it purported to appoint a separate arbitrator – BP filed this action under the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (the "New York Convention"), 21 U.S.T. 2517, *reprinted at* 9 U.S.C. § 201. BP requested that the district court set aside the parties' agreement as to the selection of arbitrators, dismiss all of the party-appointed arbitrators, and order that all arbitrators be chosen either by the Secretary-General of the Permanent Court of Arbitration at The Hague ("PCA"), the International Chamber of Commerce ("ICC"), or the court. *See* Orig. Compl. ¶ 3 (requesting that the court "establish an arbitrator selection process" or "appoint the arbitral tribunal"), ¶¶ 22, 25 (requesting that the court dismiss all of the party-appointed arbitrators and order the parties to petition the PCA or ICC to appoint all the arbitrators), ¶ 25 (requesting, in the alternative, that the court appoint all of the arbitrators), ¶ 46 (requesting that the court dismiss all of the party-appointed

arbitrators and either select a procedure for the parties or appoint the entire panel itself) (R. 8).

## F.     Proceedings In the District Court

In response to BP's Complaint, Noble moved to dismiss the case because the parties' agreement calls for arbitrator selection disputes to be referred to the PCA. Noble Motion at 7-10 (R. 159).  Alternatively, Noble argued that the simple and reasonable solution to the controversy was to hold that each *side* (as opposed to "each party") must appoint one arbitrator, resulting in two party-appointed arbitrators, as contemplated by the ACA Rules, who may then proceed to appoint the third, presiding arbitrator.  *Id.* at 10-13.

BP responded by arguing that the district court should dismiss the three arbitrators previously appointed by the parties and appoint all three arbitrators itself or refer the matter to an arbitration body for appointment of all three arbitrators.  *See* BP Motion at 15-18 (R. 260).  BP also suggested, in the alternative, that the matter could be resolved by ordering a five-member arbitration panel consisting of the three arbitrators already appointed by the parties and two "neutral" arbitrators appointed by the party-appointed arbitrators. *Id.* at 17.  Exxon responded with yet a third approach, urging the district court to simply hold that the three arbitrators already appointed by the parties constitute the panel and that

the appointment of any additional arbitrators is therefore unnecessary.  Exxon Resp. at 11-12 (R. 599).

The district court initially scheduled an oral hearing for May 20, 2011.  (R. 841)  However, before the hearing went forward, the court canceled the hearing and granted one of the alternative forms of relief requested by BP.  (R.E. 3)  The district court's order required that five arbitrators be appointed to hear the case, consisting of the three arbitrators previously appointed by the parties and two additional arbitrators to be appointed by the party-appointed arbitrators.  *Id.*  If the party-appointed arbitrators could not unanimously agree to the two additional arbitrators within 30 days, the PCA shall make the appointments.  *Id.*  The court also denied Noble's Motion to Dismiss as moot.  (R.E. 5)

After the district court issued its ruling, BP immediately informed the PCA that its assistance may be need for the appointment of arbitrators.  (R. 920)  Thereafter, the three existing arbitrators failed to unanimously agree on any additional arbitrators and BP filed a request with the PCA that it begin the appointment process.  (R. 889)  Noble, however, timely appealed the district court's orders and requested a stay of such orders in the district court pending appeal. (R.E. 2, 4; R. 868)

## SUMMARY OF ARGUMENT

The district court's authority to intervene in the arbitrator selection process in this case derives from the FAA, the principal purpose of which is to compel courts to enforce arbitration agreements. Here, the parties agreed in writing that their dispute shall be arbitrated before a panel of three arbitrators appointed in accordance with the procedure outlined in the Arbitration and Conciliation 1990 ("ACA"), and the ACA Rules provide that the Secretary-General of the Permanent Court of Arbitration at The Hague may resolve lapses in the appointment of arbitrators. Instead of enforcing these agreements, as mandated by the FAA, however, the district court assumed control and ordered that five arbitrators be appointed instead of three.

This Court should reverse the district court's order and render a judgment of dismissal. In the alternative, this Court should reverse the district court's order requiring the appointment of five arbitrators and order that three arbitrators shall be appointed. Moreover, on *de novo* review, this Court should order that BP and Exxon, as co-respondents in the underlying arbitration, must jointly appoint the second of the three arbitrators, and the two party-appointed arbitrators shall appoint the presiding third arbitrator in accordance with the ACA Rules.

## ARGUMENT

### I. THIS COURT REVIEWS THE DISTRICT COURT'S ORDERS *DE NOVO.*

This Court reviews the district court's orders granting BP's request for relief under Section 5 of the FAA, and denying Noble's Motion to Dismiss, *de novo.* *See Ranzy v. Tijerina*, 393 F. App'x 174, 175 (5th Cir. 2010) (reviewing denial of motion for relief under Section 5 of the FAA *de novo*); *Pacific Reins. Mgmt. Corp. v. Ohio Reins. Corp.*, 814 F.2d 1324, 1327 (9th Cir. 1987) (reviewing grant of relief under Section 5 of the FAA *de novo*); *see also Seacor Holdings, Inc. v. Commonwealth Ins. Co.*, 635 F.3d 675, 680 (5th Cir. 2011) (stating that orders granting summary judgment are reviewed *de novo*); *E.I. DuPont de Nemours & Co. v. Sawyer*, 517 F.3d 785, 792 (5th Cir. 2008) (stating that orders denying a motion to dismiss for lack of jurisdiction or for failure to state a claim are reviewed *de novo*).

### II. THE DISTRICT COURT ERRED IN DENYING NOBLE'S MOTION TO DISMISS.

BP requested the court's intervention in the arbitrator selection process under Section 5 of the FAA, which provides:

> If in the [arbitration] agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a

9

> vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5. On its face, the statute requires either (1) the absence of an agreed method of appointing arbitrators; (2) a "fail[ure] to avail" of the agreed method; or (3) a "lapse in the naming of an arbitrator." *Id.* If one of these three circumstances exists, the court is authorized to "designate and appoint an arbitrator or arbitrators or umpire, as the case may require." *Id.*

The arbitration agreement here clearly provides a method of appointing arbitrators. It provides that "three (3) arbitrators [shall be] appointed in accordance with [the ACA Rules]." Drilling Contract § 18.2 (R.E. 6). The ACA Rules specify that "each party shall appoint one arbitrator; and the two arbitrators thus appointed shall choose the third arbitrator who shall act as the presiding arbitrator of the arbitral tribunal." ACA Rules, art. 7(1) (R.E. 8). Thus, the first statutory basis for the court to act – absence of an agreed method of appointing arbitrators – is absent.

Furthermore, there was no "fail[ure] to avail" of the agreed method of appointing the arbitration panel. Under Section 5 of the FAA, a "failure to avail" means that one of the parties has refused to comply with the agreement, thereby delaying arbitration indefinitely. *In re Salomon Inc. Shareholders' Deriv. Litig.*, 68 F.3d 554, 560 (2d Cir. 1995). The record here shows that Noble appointed an

arbitrator upon demanding arbitration and that BP and Exxon both purported to appoint their own arbitrators.  (R. 224, 240, 242)  The fact that the parties may disagree about whether the other parties' appointments were valid does not show a failure to avail of the method of appointing arbitrators – it only shows a disagreement over whether it was properly applied.  *See Dockser v. Schwartzberg*, 433 F.3d 421, 425 (4th Cir. 2006) (holding disagreement over whether one or three arbitrators must be appointed is not a failure to avail).

The only arguable basis for the district court to grant relief under Section 5 of the FAA was that the parties' disagreement over how and whether the agreed method of appointing arbitrators should be applied was a "lapse" in the naming of the second and/or third arbitrators.  *See Stop & Shop Super. Co. LLC v. United Food & Comm'l Workers Union Local 342, AFL-CIO*, 246 F. App'x 7, 11 (2d Cir. 2007) (finding a "lapse" where each party named an arbitrator but refused to recognize the other's named arbitrator).  But the ACA Rules provide a method for resolving such lapses:  Any party may request that "the court" appoint the arbitrator; and for international commercial disputes like this one,[2] the ACA substitutes "appointing authority" – defined in the Act as the Secretary-General of the Permanent Court of Arbitration at The Hague (the "PCA") – in place of "the

---

[2] *See* ACA § 57(2) (defining international arbitration).

court." *See* ACA Rules, arts. 7(2)-(3); ACA §§ 44(6)-(7), 54(2) (R.E. 8).[3]  As a

matter of law, that agreed method has to be followed.  *See* 9 U.S.C. § 5 (providing

that if a method of appointing the arbitrators is provided in the parties' agreement,

"such method shall be followed"); *see also AT&T Mobility LLC v. Concepcion*,

131 S. Ct. 1740, 1748 (2011) (stating that the "principal purpose" of the FAA is to

"ensur[e] that private arbitration agreements are enforced according to their

terms.") (quoting *Volt Info. Sciences v. Board of Trustees*, 489 U.S. 468, 478

(1989)).  The trial court had no authority to disregard the parties' agreement to

allow the PCA to resolve this matter.

Moreover, the central issue in this case – how the arbitrators will be selected

– is inappropriate for judicial resolution under the FAA.  In *Howsam v. Dean

Witter Reynolds*, the Supreme Court held that procedural questions that grow out of

an arbitrable dispute, as well as "gateway procedural disputes," are presumptively

*not* for a judge but for an arbitrator to decide.  537 U.S. 79, 84-85 (2002) (holding

arbitrators must decide whether claimant lost his right to arbitrate under the NASD

rules).  Applying *Howsam*, the Sixth Circuit in *Dockser v. Schwartzberg* held that a

dispute over the number of arbitrators is a procedural question that is not

appropriate for judicial resolution under Section 5 of the FAA.  *See* 433 F.3d at

---

[3] Insofar as the ACA's international commercial arbitration provisions may be construed to be in conflict with the ACA Rules themselves because they provide that "the appointing authority" rather than "the court" shall resolve lapses in the appointment of arbitrators, the ACA Rules make clear that the provisions of the Act prevail.  ACA Rules, art. 1.

425-28 (affirming dismissal of action to resolve a dispute over the proper number of arbitrators under Section 5 of the FAA where the parties agreed to arbitrate under the AAA rules).

Likewise here, the parties' dispute over how the arbitrators are to be appointed is a procedural question that is not appropriate for judicial resolution. As in *Dockser*, where the parties agreed to arbitrate under a set of rules and procedures that provided a means of resolving their dispute, the parties here agreed to arbitration under the ACA Rules, which provide that lapses in the appointment of arbitrators may be submitted to the PCA for resolution. *See* ACA §§ 44(6)-(7) (providing that if the second or third arbitrator is not appointed within 30 days, "the appointing authority" may be requested to make the appointment); *see also id.* § 52(2) (providing that "the appointing authority" for international commercial arbitration is the PCA). Therefore, the gateway procedural issue of how the arbitral panel shall be appointed was not appropriate for judicial resolution under Section 5 of the FAA and the district court should have granted Noble's Motion to Dismiss. *Dockser*, 433 F.3d at 423, 428.

## III. THE DISTRICT COURT ERRED IN ORDERING THAT FIVE ARBITRATORS BE APPOINTED INSTEAD OF THREE.

### A. The FAA and the Parties' Agreement Require Three Arbitrators.

Even if the district court had authority to grant relief under Section 5 of the FAA, its order requiring five (5) arbitrators was improper. Assuming the

requirements of Section 5 are met, the district court was authorized to "designate and appoint" the arbitrators affected by the lapse, subject to the proviso that "unless otherwise provided in the agreement the arbitration shall be by a single arbitrator." 9 U.S.C. § 5.

By ordering a five-member arbitration panel, the district court directly violated the statutory limitation on the number of arbitrators. The FAA expressly provides that there shall either be one arbitrator or the number "otherwise provided" in the parties' agreement. *Id.* The parties' arbitration agreement specifies that there shall be three arbitrators. Drilling Contract § 18.2 (R.E. 6). Moreover, the ACA Rules specify that the number of arbitrators shall be either one or three, and absent an agreement to one arbitrator, "three arbitrators shall be appointed." ACA Rules, art. 5 (R.E. 8). Therefore, the court's order is directly contrary to both the parties' agreement and the FAA.

The district court's error is accentuated by the fact that the parties' agreements actually contemplate the present scenario where Noble, Exxon, and BP are all parties to a dispute. Section 33 of the Assignment Agreement contains a two-party arbitration provision. It first provides that disputes between the assignor and assignee, Exxon and BP, shall be arbitrated before a panel of three arbitrators pursuant to the International Arbitration Rules of the AAA. *See* Assignment Agreement § 33 (R.E. 7). But for disputes to which Noble is also a party (*i.e.*, a

three-party arbitration), the agreement specifies that the dispute resolution procedures in the Drilling Contract shall control. *See id.* (providing that arbitration of "any disputes to which [Noble] is a party shall be governed by the language contained in Sections 18.1 and 18.2 of the [Drilling Contract]."). The Drilling Contract, in turn, requires arbitration before "three (3) arbitrators appointed in accordance with [the ACA Rules]." Drilling Contract § 18.2 (R.E. 6) On their face, these provisions contemplate arbitrations in which Noble, Exxon, and BP are all parties, and, in that situation, call for arbitration before a panel of ***three*** arbitrators. *Id.*

Assuming that Section 5 of the FAA authorizes the court to intervene in the arbitrator selection process, it requires that three arbitrators, not five, be appointed because the parties' agreement "otherwise provide[s]" for three arbitrators. *See* 9 U.S.C. § 5. This is consistent with the "fundamental principle" of arbitration law, repeatedly emphasized by the Supreme Court, that arbitration is a matter of contract. *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010); *Howsam*, 537 U.S. at 83; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Because the district court's order disregards the parties' agreement to three arbitrators and requires five arbitrators, in violation of Section 5 of the FAA and the ACA Rules, it is erroneous and should be reversed.

**B.     The Authorities Presumably Relied Upon By the District Court for Requiring Five Arbitrators Are Invalid or Inapposite.**

The district court's order requiring five arbitrators contains no analysis and cites no authorities.  (R.E. 3)  However, in BP's alternative request that the court require five arbitrators, BP relied on *In re Czarnikow-Rionda Co.*, 512 F. Supp. 1308 (S.D.N.Y. 1981), and *General Nav., Inc. v. Brovig*, No. 80 CIV. 6637, 1981 WL 22812 (S.D.N.Y. Feb. 13, 1981).  *See* BP's Motion at 17 (R. 280); BP's Reply to Noble's Resp. at 9-10 (R. 803-04).  Both of those district court cases cite and rely upon the Second Circuit's opinion in *Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A.*, 527 F.2d 966 (2d Cir. 1975), *cert. denied*, 426 U.S. 936 (1976).  *See In re Czarnikow-Rionda*, 512 F. Supp. at 1309-10 (citing and relying upon *Nereus Shipping*); *General Nav.*, 1981 WL 22812, at *2 (same).

In *Nereus Shipping*, the issue before the court was whether the district court erred in consolidating arbitrations by a ship owner against (i) the charterer of the vessel and (ii) the guarantor of the charterer's obligations.  527 F.2d at 968.  Even though the parties' agreements did not expressly authorize or agree to consolidated arbitration proceedings, the Second Circuit held that because the guarantor had agreed to be bound by the charterer's obligations under the charter party in the event of default, the guarantor effectively agreed to arbitration.  *Id.* at 974-75.  Moreover, applying Rules 42(a) and 81(a)(3) of the Federal Rules of Civil Procedure, the Second Circuit held that the facts and circumstances supported

16

consolidation, emphasizing that "the liberal purposes of the Federal Arbitration Act clearly require that this act be interpreted so as to permit and even to encourage the consolidation of arbitration proceedings in proper cases, such as the one before us." *Id.* at 975.

The Second Circuit added:  "[I]f this flexible and desirable remedy is to encompass consolidation, we hold that this must include the essential implementation of the consolidated proceeding by moulding the method of selection and the number of arbitrators so as to fit this new situation.  New situations require new remedies." *Id.*  Then, without citing any authority, the court disregarded the parties' agreement to three arbitrators and ordered that five arbitrators shall be appointed – three by the parties in the consolidated proceeding and two by the three party-appointed arbitrators. *Id.*

First, this Court has never followed or agreed with *Nereus Shipping*.  In fact, in 1987, this Court rejected that court's "liberal" approach to consolidating arbitrations. *See Del E. Webb Const. v. Richardson Hosp. Auth.*, 823 F.2d 145, 150 (5th Cir. 1987) (holding that consolidation is improper unless the parties have agreed to consolidation, agreeing with *Weyerhauser Co. v. Western Seas Shipping Co.*, 743 F.2d 635 (9th Cir.), *cert. denied*, 469 U.S. 1061 (1984), which expressly rejected *Nereus Shipping*), *overruled in part on other grounds*, *Pedcor Mgmt. Co. Inc. Welfare Benefit Plan v. National Personnel of Tex., Inc.*, 343 F.3d 355, 363

(5th Cir. 2003). Thus, *Nereus Shipping* has never represented the law in this circuit.

Second, and more important, *Nereus Shipping* is no longer good law, even in the Second Circuit. In 1993, the Second Circuit specifically held, in light of Supreme Court authority after *Nereus Shipping* holding that the FAA requires enforcement of the arbitration agreements as written, that its "liberal" application of the FAA in *Nereus Shipping* was no longer good law. *See Government of the United Kingdom of Great Britain v. Boeing Co.*, 998 F.2d 68, 71-74 (2d Cir. 1993) (stating that, in light of subsequent Supreme Court authority, the court's "liberal" application of the FAA in *Nereus Shipping* is no longer good law).[4] Moreover, after the Supreme Court's 2002 opinion in *Howsam v. Dean Witter Reynolds*, holding that threshold procedural questions are matters for the arbitrator to decide, not the court, 537 U.S. at 85, federal courts have held that consolidation of arbitrations – the central issue in *Nereus Shipping* – is a matter for an arbitral tribunal to decide. *Certain Underwriters at Lloyds, London v. Westchester Fire Ins. Co.*, 489 F.3d 580, 584-90 (3d Cir. 2007); *Employers Ins. Co. v. Wausau v.*

---

[4] Before 1993, federal courts in New York – including the two cases cited by BP – often followed *Nereus Shipping* and granted requests to consolidate arbitrations arising out of the same underlying facts and required the appointment of five arbitrators. *See, e.g., Antco Shipping Co., Ltd. v. Sidemar S.p.A.*, 417 F. Supp. 207, 219 (S.D.N.Y. 1976) (applying *Nereus Shipping* to require consolidated arbitration before five arbitrators); *In re Czarnikow-Rionda*, 512 F. Supp. at 1309-10 (same); *General Nav.*, 1981 WL 22812, at *2 (same); *Clipper Gas v. PPG Indus., Inc.*, 804 F. Supp. 570, 576 (S.D.N.Y. 1992) (same); *but see Ore & Chem. Corp. v. Stinnes Interoil, Inc.*, 606 F. Supp. 1510 (S.D.N.Y. 1985) (holding that *Nereus Shipping* has been completely undercut by Supreme Court authority). Since then, no court has followed *Nereus Shipping*, and for good reason.

*Century Indem. Co.*, 443 F.3d 573, 577-78 (7th Cir. 2006); *Shaw's Supermarkets, Inc. v. United Food & Comm'l Workers Union, Local 791*, 321 F.3d 251, 254 (1st Cir. 2003).

Furthermore, in addition to the fact that *Nereus Shipping* is no longer good law, the facts of the present case are distinguishable from *Nereus Shipping* and its progeny. Unlike the facts in those cases, the parties' agreements here expressly contemplate an arbitration involving all three of the parties in this case and, in that situation, still require arbitration before a panel of *three* arbitrators. *See* Assignment Agreement § 33 (contemplating "disputes to which [Noble] is a party," and requiring such disputes to be arbitrated in accordance with the terms of the Drilling Contract) (R.E. 7); Drilling Contract § 18.2 (requiring arbitration before a panel of "three (3) arbitrators appointed in accordance with the [ACA Rules].") (R.E. 6).

Under the FAA, courts are required to enforce arbitration agreements according to their terms. *See AT&T Mobility*, 131 S. Ct. at 1748 (stating that the "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements are enforced according to their terms."). Here, the express terms of the parties' agreement require arbitration before a panel of three arbitrators, not five, and the district court had no authority to deviate from that agreement. *Id.*; 9 U.S.C. § 5 (requiring either one arbitrator or the number "otherwise provided" in the parties'

agreement).   Therefore, the district court's order requiring five arbitrators is erroneous and should be reversed.

## IV.   THE DISTRICT COURT SHOULD HAVE ORDERED BP AND EXXON, AS CO-RESPONDENTS IN THE ARBITRATION, TO JOINTLY APPOINT THE SECOND ARBITRATOR.

Assuming the district court had authority to grant relief under Section 5 of the FAA, the proper question before the court was how the three arbitrators required by the parties' agreements should be appointed.   This issue was extensively briefed and argued in the district court, and all facts needed to resolve it are undisputed and supported by the record, so this Court may resolve the matter on *de novo* review.  *See, e.g., Threadgill v. Prudential Securities Group, Inc.*, 145 F.3d 286, 295 n.20 (5th Cir. 1998) (holding court of appeals may resolve important issues not addressed by the district court on *de novo* review where supported by the record); *Janiga v. Questar Capital Corp.*, 615 F.3d 735, 742 (7th Cir.), *cert. denied*, 131 S. Ct. 836 (2010) (same).

The arbitration provision in the parties' written agreement provides simply that "three (3) arbitrators [shall be] appointed in accordance with [the ACA Rules]."  Drilling Contract § 18.2 (R.E. 7).  The incorporated ACA Rules state that "each party shall appoint one arbitrator; and the two arbitrators thus appointed shall choose the third arbitrator who shall act as the presiding arbitrator of the arbitral tribunal."  ACA Rules, art. 7(1) (R.E. 8).  After the claimant appoints its

arbitrator, the respondent has 30 days to appoint its arbitrator. *Id.*, art. 7(2). Thereafter, the two party-appointed arbitrators have 30 days to appoint a third, presiding arbitrator. *Id.*, art. 7(3). *See also* ACA §§ 44(5)-(7).

On their face, the ACA Rules contemplate a two-party arbitration involving one claimant and one respondent. Here, however, there are two respondents – BP and Exxon. These circumstances are not specifically addressed in the ACA Rules; however, the UNCITRAL Arbitration Rules, on which the ACA Rules were based, were amended in 2010 to address this problem by requiring that the side with multiple parties (whether claimants or respondents) jointly appoint an arbitrator. *See* UNCITRAL Rules § 10(1) ("For purposes of article 9, paragraph 1 [party-appointment of arbitrators under procedure mirroring Article 7(1) of the ACA Rules], where three arbitrators are to be appointed and there are *multiple parties as claimant or as respondent*, unless the parties have agreed to another method of appointment of arbitrators, *the multiple parties jointly, whether as claimant or respondent, shall appoint an arbitrator*.") (emphasis added) (R.E. 9).

Likewise, on at least one occasion, the AAA has resolved the same controversy in the same way. In *Baylor Univ. Med. Ctr. v. GE Group Life Assur. Co.*, No. 3:06-MC-0103-G, 2007 WL 1701821 (N.D. Tex. June 12, 2007) (unpublished), the AAA was presented with the identical issue presented here: how the second of three arbitrators is to be selected when the arbitration agreement

calls for "each party" to appoint an arbitrator. *Id.* at *1. Like the current UNCITRAL Rules, the AAA determined that "each party" should be construed as "each side" and required the multiple respondents to jointly appoint the second arbitrator. *Id.* at *1. When the respondents failed to do so, one of the parties filed a lawsuit under FAA to resolve the matter and Judge Fish of the Northern District of Texas honored the AAA's decision. *Id.* at *2. And, because the respondents could not agree on an arbitrator, the court appointed the second arbitrator for them. *Id.*

Furthermore, courts have resolved a similar problem in the context of allocating peremptory strikes at jury trials where the governing statute provides that "each party" shall have a given number of strikes. In those cases, the courts have resolved the matter by construing "each party" to mean "each side" in the lawsuit. *See, e.g., Wardell v. McMillan*, 844 P.2d 1052, 1061 (Wyo. 1992) (construing statute providing that "each party" shall have a certain number of peremptory strikes to mean "each side" shall have that number); *Lauman v. Lee*, 626 P.2d 830, 835-36 (Mont. 1981) (same); *Patterson Dental Co. v. Dunn*, 592 S.W.2d 914, 917 (Tex. 1979) (same); *Morris v. Cartwright*, 258 P.2d 719, 721-22 (N.M. 1953) (same); *Curtis v. Lowe*, 87 N.E.2d 865, 871 (Ill. App. Ct. 1949) (same).

Construing "each party" to mean "each side" in this case is logical because the ACA Rules contemplate only two parties, representing the two "sides" to the controversy – *i.e.*, the claimant and the respondent.  Likewise, the Drilling Contract containing the relevant arbitration provision contemplates a two-party relationship between the "Company" (Exxon and/or BP), on the one hand, and the "Contractor" (Noble), on the other.  *See* Drilling Contract at 1 (R. 178).  By agreeing to arbitrate all disputes involving Noble pursuant to the dispute resolution provisions in the Drilling Contract, the parties accepted this binary commercial relationship for dispute resolution purposes.

Moreover, construing "each party" to mean "each side" is fair and reasonable because Noble, as the sole claimant, is clearly adverse to BP and Exxon, and both of those parties have a common interest in trying to defeat Noble's claim for relief.  Indeed, both BP and Exxon argued in the court below that Noble cannot recover against either of them because its drilling rig allegedly was out of compliance with the Drilling Contract, and Exxon characterized this as *the controlling issue* in the case.  *See* Exxon Resp. at 2-3, 8 (characterizing this issue as "one of the key issues in the underlying dispute," "one of the major issues the arbitrators must resolve," and "[t]he controlling issue in dispute") (R. 600-01, 606); BP Motion at 3-4 (detailing BP's claim that it has no liability to Noble because Noble's drilling rig allegedly was out of compliance with the Drilling

Contract) (R. 266-67). Fairness dictates that each of the two sides have an equal number of party-appointed arbitrators.

Exxon and BP claim not to be aligned as a "side" in this case, but their position is untenable. Fundamentally, this case is about resolving Noble's claim that it is entitled to payment under the Drilling Contract. Noble claims that Exxon (the original party to the Drilling Contract) and/or BP (a party that signed an Assignment Agreement, promising to be responsible for Exxon's obligations under the Drilling Contract) have breached their contractual obligations. (R. 224-26) On the central issues arising out of this claim, BP's and Exxon's interests are precisely aligned against Noble – both have the same interest in attempting to defeat Noble's claim for relief. (R. 266-27, 600-01, 606)

All other substantive issues that BP and Exxon would point to to show that their interests are not aligned, or are somehow adverse to one another, go to the secondary question of which party, as between them, should be liable for Noble's damages. This makes BP and Exxon no different than any other co-defendants in a lawsuit who point the finger at one other, claiming that if anyone is liable, it is the other defendant. It does not change the fact that BP and Exxon are aligned against Noble on the core issues in this case and should be treated as a side for purposes of appointing arbitrators. *See Patterson Dental*, 592 S.W.2d at 917 (stating that each "side" in a controversy includes each "litigant or group of litigants having

essentially common interests," and emphasizing that litigants' interests need not be identical to constitute a "side").

## CONCLUSION

Noble requests that this Court reverse the district court's order requiring the appointment of a five-member arbitration panel and render a judgment of dismissal. Alternatively, Noble requests that this Court reverse the district court's order and render judgment that BP and Exxon must jointly appoint the second party-appointed arbitrator for the underlying arbitration. Noble further requests that this Court decree that the underlying arbitration shall otherwise proceed apace in accordance with the ACA Rules and the parties' agreements. Finally, Noble request that the Court award it all further and general relief, both legal and equitable, as it finds is appropriate.

Respectfully submitted,

*/s/ Gregg C. Laswell*
Gregg C. Laswell
J. Stephen Barrick
Allen H. Rustay
HICKS THOMAS LLP
700 Louisiana Street, Suite 2000
Houston, Texas 77002
(713) 547-9100
(713) 547-9150 (Fax)

**ATTORNEY FOR DEFENDANT-APPELLANT NOBLE NORTH AFRICA LIMITED**

## CERTIFICATE OF SERVICE

Service of this document on all counsel of record was accomplished automatically through the Court's electronic Notice of Docket Activity on September 20, 2011.

*/s/ Gregg C. Laswell*

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 6,700 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2000 in 14-point Times New Roman font.

*/s/ Gregg C. Laswell*